# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LISA YOLANDA SCHROEDER,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_____/

Case No. 1:24-cv-00025-WBS-SKO

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED

(Doc. 12)

14-DAY DEADLINE

## I.    INTRODUCTION

Plaintiff Lisa Yolanda Schroeder ("Plaintiff") seeks judicial review of a final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 18.)

summary judgment be denied, and that the final decision of the Commissioner be affirmed.

## II.    BACKGROUND

On July 20, 2021, Plaintiff protectively applied for DIB payments, alleging she became disabled on April 1, 2010, due to a failed cervical fusion; bilateral arm and elbow numbness and pain; shoulder and neck pain; lack of strength in her hand; and tingling in her left elbow. (Administrative Record ("AR") 17, 82, 99.)  Plaintiff has since amended her alleged onset date to January 31, 2015.  (AR 17, 38–39.)

Plaintiff was born in 1966 and was 49 years old on the alleged disability onset date.  (AR 81, 98.)  Plaintiff completed some college and previously worked as a data entry clerk and an insurance verification clerk.  (AR 28, 40, 216.)

### A.    Relevant Evidence of Record[3]

In August 2016, Plaintiff presented to orthopedic surgeon Steven Schopler for a re-evaluation of her cervical spine "after having not been seen in over a year-and-a half."  (AR 360–63.)  A "good" history of anterior cervical discectomy and fusion was noted.  (AR 360, 362.)  Plaintiff reported that in the last four months she has experienced "severe, debilitating, cervicothoracic junctional pain, and right shoulder blade pain radiating to the upper extremity in the thumb and index finger."  (AR 360.)  X-ray images of her cervical spine were "unremarkable," revealing "normal alignment" and "normal cervical lordotic contour."  (AR 362.)  No degenerative disc disease, spondylolisthesis, or "spondylitic changes" were noted.  (AR 362.)  On examination, Dr. Schopler found that Plaintiff had tenderness with palpation and painful range of motion in her cervical spine.  (AR 362.)

An MRI of Plaintiff's cervical spine performed in September 2016 showed "slightly progressive cervical segmentation at C3–4 and C6–7," with mild and minimal degenerative changes at the fusion site.  (AR 359, 372.) A physical examination by Dr. Schopler that same month was the same as before.  (AR 358.)  Dr. Schopler indicated that Plaintiff "will continue with conservative treatment," and recommended a "trial of cervical acupuncture."  (AR 359.)  In November 2017,

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff went to an urgent care clinic complaining of left shoulder and neck pain. (AR 330.) She was prescribed Norco for pain. (AR 330.)

In May 2018, Plaintiff presented to orthopedic surgeon Kamil Erfanian, M.D. for evaluation of worsening right-hand numbness. (AR 354–57.) She reported that the numbness and tingling are aggravated with driving. (AR 354.) Plaintiff also complained of posterior elbow pain. (AR 354.) She reported using wrist splints without relief. (AR 354.) X-ray imaging of Plaintiff's right hand was negative for fractures, dislocations, and arthropathy. (AR 356.)

An EMG test performed in June 2018 showed severe carpal tunnel syndrome in Plaintiff's right hand. (AR 373.) In July 2018, Dr. Erfanian recommended right carpal tunnel release surgery (AR 352), which was conducted later that month (AR 387–88.) Also in July 2018, Plaintiff again went to the urgent care clinic for neck and shoulder pain. (AR 326.) She reported she had been experiencing symptoms for the past 10 years that had worsened over the past two weeks. (AR 326.) Plaintiff was given a corticosteroid injection. (AR 326.)

Plaintiff attended an appointment in August 2018 following her carpal tunnel surgery. (AR 344–45.) She reported that her numbness and tingling had "nearly resolved," with some "minor numbness" at two fingertips and "90% improvement in her numbness and tingling throughout the rest of her hand." (AR 344.) She expressed interest in left hand carpal tunnel surgery, as she was having numbness and tingling throughout. (AR 344.) An EMG test performed that same month showed mild carpal tunnel syndrome in the left hand. (AR 382.)

In September 2018, Plaintiff complained of "intermittent numbness and tingling in the left hand." (AR 341.) It was recommended that she "try conservative treatment options before proceeding with surgery." (AR 342.) She received a cortisone injection and was to begin sleeping in a left wrist brace. (AR 342.)

Plaintiff reported no further numbness or tingling in her right hand in November 2018. (AR 339.) She also stated that her right neck pain had resolved. (AR 339.) Plaintiff reported that she has "less numbness and tingling in the left hand," and rated it as "occasional." (AR 339.)

B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on November 12, 2021,

3

and again on reconsideration on March 16, 2022.  (AR 17, 121–25, 134–39.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 140–61.)  At the hearing on January 12, 2023, Plaintiff appeared by telephone with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 39–54.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 54–63.)

### 1.    Plaintiff's Testimony

At the hearing, Plaintiff testified that neck pain during the relevant period[4] limited her ability to lift, pull, and reach and hold items overhead.  (AR 47.)  She reported that pain in her neck and shoulders interferes with her sleep.  (AR 45.)  According to Plaintiff, she has diminished strength because of her carpal tunnel syndrome and that repetitive movements cause her forearm to cramp.  (AR 49–50.)  She cannot open a jar, and using a knife or a peeler causes shooting pain in her hand.  (AR 50.)  Plaintiff testified that lifting with both arms also causes shooting pain and muscle spasms.  (AR 51.)  She treated her pain with Tylenol.  (AR 53.)

Plaintiff testified that during the relevant period she performed household chores, with the help of her husband, and cooked simple meals for her and husband, shopped for smaller items, and drove a car.  (AR 43–44, 48, 49.)  She watched television and used social media.  (AR 44.)  Plaintiff testified she would visit with her grandchildren twice a month, although she could not lift her grandson.  (AR 45, 53.)

### 2.    Vocational Expert's Testimony

According to the VE, Plaintiff had past work as a data entry clerk, Dictionary of Operational Titles (DOT) code 203.582-054, performed at the sedentary exertional level with a specific vocational preparation (SVP)[5] of 4; and as an insurance and benefits clerk, DOT code 205.567-010, performed at the sedentary exertional level with an SVP of 4.  (AR 54.)  The ALJ asked the VE to a person who could lift and carry about twenty pounds occasionally and ten pounds frequently.  (AR 55.)  The

---

[4] The relevant period is defined as January 31, 2015, through March 31, 2019.  (AR 18, 22, 25, 40.)

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

person can sit, stand, or walk for about six of eight hours. (AR 55.) With the left non-dominant upper extremity, the person could frequently push, pull, handle, and finger. (AR 55.) The person could reach overhead with the left non-dominant upper extremity on an occasional basis. (AR 55.) The person could occasionally crawl. (AR 55.) The person should avoid concentrated exposure to extremes of cold and vibration, should not work at any unprotected heights, should not work on ladders or scaffolds, and should not perform any work around dangerous, moving machinery. (AR 55–56.) The VE testified that such a person could perform Plaintiff's past work of insurance verification clerk, but not the data entry clerk position, as the latter requires "constant," *i.e.* at least 70% precent of the day, fingering. (AR 56, 61–62.)

Considering a second hypothetical, where a person could perform sedentary work with occasional overhead reaching, the VE testified that such a person could perform both of Plaintiff's past work occupations. (AR 57–58.) According to the VE, considering a third hypothetical involving a person who could lift and carry only up to ten pounds occasionally; occasionally reach overhead; stand and walk for one hour; and sit for six hours, there would be no work such a person could perform. (AR 59.) Finally, the VE considered a fourth hypothetical, which included an additional limitation to the second hypothetical that the individual would be limited to occasional use of the right hand, the VE testified that Plaintiff's past work would be ruled out. (AR 52.)

**C.  The ALJ's Decision**

In a decision dated January 26, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–29.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–29.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on March 31, 2019, and she had not engaged in substantial gainful activity since January 31, 2015, the alleged onset date, though the date of last insured of March 31, 2019 (step one). (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe through March 31, 2019: cervical spine degenerative disc disease with a history of fusion surgery; right carpal tunnel syndrome (status-post release surgery in July 2018); and mild left carpal tunnel syndrome. (AR 20.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR

20–21.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[6] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a). [Plaintiff] could lift/carry ten pounds occasionally and less than ten pounds frequently; sit six of eight hours; and stand/walk two of eight hours. She could frequently push/pull, handle, and finger/feel, with the left nondominant upper extremity. [Plaintiff] could occasionally reach overhead bilaterally. She could occasionally crawl. [Plaintiff] should avoid concentrated exposure to extremes of cold and vibration. She should not work at unprotected heights, on ladders/scaffolds, nor around dangerous moving machinery

(AR 20–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as an insurance and verification clerk (step 4). (AR 28–29.) The ALJ concluded Plaintiff was not disabled from January 31, 2015, the alleged onset date, through March 31, 2019, the date last insured. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 2, 2023. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

### III.   LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis."  *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the

7

Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of

8

showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective symptom complaints. (Docs. 12, 17.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 16.) The undersigned agrees with the Commissioner.

### A.    The ALJ Properly Found Plaintiff Less Than Fully Credible

#### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[7] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may

---

[7] The undersigned rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 16 at 2 n.1.)

consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could have reasonably been expected to produce the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the objective medical evidence and other evidence . . . ." (AR 25.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 12-1 at 5 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).) However, in *Lambert*, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277.

Moreover, the ALJ here did not merely provide a summary of the medical evidence. Unlike in *Lambert* (and *Brown-Hunter*), the ALJ here detailed Plaintiff's allegations of "work precluding problems with her neck and hands," and contrasted that testimony with opposing evidence from the medical record showing mild objective findings; infrequent and conservative treatment, with improvement; and performance of certain daily activities (AR 25–26). *See Lambert*, 980 F.3d at 1277 (""We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting

[claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (quoting *Brown-Hunter*, 806 F.3d at 494).  The identification of specific allegations and reasons why the evidence undermines those allegations—described in further detail below–permits the undersigned to review the ALJ's reasoning.  Plaintiff's argument is therefore unavailing.  *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . .  The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for judicial review); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity.  No inferential leaps are required to find the ALJ's reasoning clear and convincing.").

The undersigned finds that the ALJ identified at least three specific reasons supported by

substantial evidence for discrediting Plaintiff's testimony:

a.     Objective medical evidence

First, the ALJ found that despite Plaintiff's complaints of "neck pain" and "hand impairments" (AR 25, 26), the "objective evidence does not support that degree of functional limitations alleged" (AR 25).  While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676, 680, 681 (9th Cir. 2005).  *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999).  "When objective medical evidence in the record is **inconsistent** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ observed that during the relevant period, the objective testing of Plaintiff's neck was "unremarkable" and showed "slightly progressive cervical segmentation" with mild and minimal degenerative changes at the fusion site.  (AR 25–26 (citing AR 359, 362, 372).)  It also showed "mild findings" with respect to Plaintiff's left carpal tunnel syndrome.  (AR 26 (citing AR 342).)

Plaintiff does not dispute this evidence, which is supported by the record.  Instead, she asserts that the ALJ improperly relied on a notation of "no acute distress" to discredit her testimony.  (Doc. 12-1 at 8.)  While the decision does mention a treatment note indicating Plaintiff "did not present in any acute distress" (AR 22), such mention is not within the ALJ's identification and discussion of the objective medical evidence that undermined Plaintiff's complaints, which occurs later in the decision (*see* AR 25–26).  Plaintiff also contends that the ALJ "completely ignore[d] relevant testimony of the Plaintiff discussing her inability to do repetitive tasks."  (Doc. 12-1 at 9.)  However, the ALJ expressly noted Plaintiff's testimony that "[r]epetitive motion causes her forearm to cramp."  (AR 22.)

At bottom, it appears Plaintiff's disagreement lies with the ALJ's interpretation of the medical

evidence, yet it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). The undersigned therefore finds the ALJ's conclusion that the evidentiary record does not support, and in fact, undermines Plaintiff's subjective statements, is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical evidence is a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence); *Molina*, 674 F.3d at 1113 (same); 20 C.F.R. § 404.1529(c)(3).

b.   Treatment history

Second, the ALJ found that Plaintiff's course of treatment undermined her subjective symptom allegations. Specifically, the ALJ found that Plaintiff's treatment for neck pain during the relevant period had been "infrequent." (AR 25, 26.) "An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). The ALJ also noted that, following treatment, Plaintiff reported that the "numbness and tingling in her right hand and right sided neck pain [had] resolved." (AR 26 (citing AR 339).) In evaluating a claimant's claimed symptoms, an ALJ may find a claimant less credible when their symptoms can be controlled by treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

Plaintiff does not address, much less explain, her sporadic treatment for neck pain, nor does she contest the ALJ's finding that her symptoms improved with treatment during the relevant period. The undersigned finds that the ALJ's conclusion that Plaintiff's treatment history is inconsistent with her testimony as to the severity of her neck and hand impairments is supported with substantial

evidence in the record.  The ALJ's discounting Plaintiff's subjective symptom testimony in light of her treatment history is therefore another clear and convincing reason for doing so.  *Bunnell*, 947 F.2d at 346; *Morgan*, 169 F.3d at 599; *Odle*, 707 F.2d at 440.

          c.       Daily activities

Third, and finally, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040.  Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's ability to "perform[] daily activities that required use of the hands such as driving a vehicle and cooking" undermined her allegations of "work-precluding problems with her neck and hands" during the relevant period (AR 25, 26; *see also* AR 22 (summary of Plaintiff's hearing testimony).).  Plaintiff criticizes the ALJ for not identifying the specific testimony they found not to be credible in view of her "limited" daily activities.[8]  (*See* Doc. 12-1 at 9–10; Doc. 17 at 3–5.)  The undersigned rejects this argument.

In *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024), on which Plaintiff primarily relies in her reply (Doc. 17 at 4–5), the ALJ "did not explain how, in his view, [the claimant's] testimony about [his] daily activities is inconsistent with his testimony about the severity and frequency of his

---

[8] Plaintiff also asserts that the ALJ "failed to discuss" her testimony that shows "greater limitations in her daily activities" (Doc. 12-1 at 10), but the testimony does not establish that such alleged limitations were present during the relevant period (January 2015–March 2015), as opposed to as of the date of the hearing (January 2023).  (*See, e.g.,* AR 48 ("Q. So, when you said cooking earlier, it's a more limited cooking that you were able to do? And what would you cook for yourself and your husband, if anything? A. Well, ***now***, it's pretty much cooking, like things I don't have to chop as much, or I use the microwave more than I do, you know doing something over the stove.") (emphasis added); AR 51–52 ("Q And I wanted to ask you about, regarding your meds and your ability to look to the left and to the right, and up and down.  Do you have any medications with that, and if so, how often, well, how often can you do it, how painful it is? A Well, ***when I go to the grocery store***, I -- or just parking in a parking lot, I just make sure that I park away from the park, because when I turn my neck to the left to look over my shoulder to make sure when I back out . . . .  I have to turn my whole body.") (emphasis added).)  Nevertheless, contrary to Plaintiff's assertion, the ALJ did not "fail to discuss" these alleged limitations on Plaintiff's ability to cook and drive.  (*See* AR 22 ("[Plaintiff] can cook for herself and spouse; but not for large family meals."; "[Plaintiff] uses the microwave more and makes meals that do not require her to chop a lot of items."; "[Plaintiff] experiences pain in her finger and knuckle when chopping or peeling."; "Currently, [Plaintiff] parks away from cars so she will not back-into someone--she has to turn her body instead of just her neck.").)

headaches . . . . [a]nd no reasonable inference that such an inconsistency exists." *Id*. at 1200.  Unlike *Ferguson*, the ALJ in this case identified the specific basis for their finding: Plaintiff's daily activities such as driving a vehicle and cooking, to which she testified (AR 43, 44, 47–48), were inconsistent with her complaints of "neck pain" and "hand impairments" that preclude her ability to work during the relevant period.  As such, a "reasonable interference" can be drawn from the evidence to the ALJ's conclusion.[9]  *See Smartt*, 53 F.4th at 499; *Kaufmann*, 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *see also Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were ***consistent*** with specific work activity, the ALJ found Plaintiff's daily activities were ***inconsistent*** with the severity of symptoms he alleged . . . [and] [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not credible.") (emphasis in original).

In sum, the undersigned finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her

---

[9] Even if the ALJ had erred in relying on Plaintiff's daily activities, any error would be harmless, as the undersigned has found the ALJ provided other clear and convincing reasons for discrediting her subjective complaints.  *See Reyes v. Berryhill*, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Williams v. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:16–cv–01543–MC, 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.")

impairments.[10]

## V.    FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment (Doc. 12) be DENIED;

2.    The final decision of the Commissioner of Social Security be AFFIRMED; and

3.    The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Lisa Yolanda Schroeder, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 20, 2026**                         /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE

---

[10] Moreover, Plaintiff has not shown that any error in the consideration of her subjective complaints would be harmful. Despite bearing the burden of proving her disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional limitations resulting from neck or hand problems were not accounted for in the ALJ's RFC assessment or otherwise identify how the ALJ's purported error was not inconsequential to the ultimate nondisability determination.  *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.").  *Cf. Ruth F., v. Comm'r of Soc. Sec.,* No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").